# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIELLE M. AYERS, | Case No. 1:25-cv-00516-SAB |
| Plaintiff, | ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |
| v. | (ECF Nos. 14, 16) |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Danielle M. Ayers ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying in part his applications for disability benefits pursuant to the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be reversed and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in her analysis of a certain medical opinion.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

/ / /

1

I.

BACKGROUND

A.    Procedural History

On August 24, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income. (ECF No. 9, Administrative Record ("AR"), 20.) In both applications, Plaintiff alleged disability beginning on June 8, 2018. (Id.) Plaintiff's applications were initially denied on October 8, 2018, and denied upon reconsideration on January 8, 2019. (Id.) Plaintiff requested a hearing before an ALJ. On May 7, 2020, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Pat W. Pauline testified. (Id.) On June 17, 2020, the ALJ issued a decision concluding that Plaintiff was not under a disability. (AR 31-32.) On October 13, 2020, the Appeals Council denied Plaintiff's request for review. (AR 5-9.)

On February 1, 2023, the Hon. Barbara A. McAuliffe issued findings and recommendations, recommending that the final decision of the Commissioner be reversed and remanded for failing to properly evaluate the medical opinion of Lance Zimmerman, Ph.D. Ayers v. Kijakazi, No. 1:21-cv-00565-JLT-BAM, 2023 WL 1433800 (E.D. Cal. Feb. 1, 2023). The District Judge adopted the findings and recommendations and reversed and remanded the final decision for further proceedings. Id. at 2023 WL 2143258 (E.D. Cal. Feb. 21, 2023).

Following remand, the Appeals Council directed the ALJ to conduct further proceedings and offer Plaintiff the opportunity for a hearing. (AR 605). Plaintiff, represented by counsel, waived her right to appear at a subsequent hearing. (Id.) Plaintiff also amended her allegations to request a closed period of disability from June 8, 2018, through January 16, 2023. (Id., citing Ex. 21B/1.)

B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act only through September 30, 2022, and that Plaintiff had not engaged in substantial gainful activity during the alleged closed period of disability from June 8, 2018,

2

through January 16, 2023. (AR 607.) Though, the ALJ found that Plaintiff had been engaged in substantial gainful activity since January 17, 2023. (AR 608.) During the period from June 8, 2018, through January 16, 2023, the ALJ found that Plaintiff had the following severe impairments: major depressive disorder, generalized anxiety disorder, panic disorder, eating disorder, and obesity. (Id.) However, during that same period, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.)

After considering the entire record, the ALJ found that Plaintiff, during the period from June 8, 2018, through January 16, 2023, had the residual functional capacity ("RFC") to perform medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c) except that she could understand, remember, and carry out simple and detailed, but not complex instructions and use judgement to make work-related decisions; she could tolerate occasional interactions with supervisors; she could tolerate occasional interactions with coworkers, but could not engage in any teamwork or collaboration with coworkers; she could tolerate no interactions with the public; she could adapt to occasional changes in a routine work setting; and she could perform low-stress work, which is defined as work requiring, at most, occasional decisions and occasional changes in work duties and tasks. (AR 610.)

The ALJ then found that that Plaintiff was unable to perform any past relevant work during the relevant period, she was born on April 30, 1988, and she had at least a high school education. (AR 614.) The ALJ discussed that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Rules as a framework supported a finding that the claimant was "not disabled," whether or not Plaintiff had transferable job skills. (Id.) Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed during the closed period. (Id.) Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, at any time since June 8, 2018, the alleged disability onset date. (AR 615.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts. (ECF

No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 6, 7, 8.)  Thereafter, the parties filed their briefs on the matter.[1]  (ECF Nos. 14, 16.)

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled.  20 C.F.R. § 404.1520;[2]  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004).  The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

Step one: Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work?  If so, proceed to step three.  If not, the claimant is not disabled.

Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

Step four: Does the claimant possess the residual functional capacity ("RFC") to

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe as a brief in support of her position on whether the Court should affirm, modify, or reverse the decision of the Commissioner.  42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits.  Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

perform his or her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).  The burden of proof is on the claimant at steps one through four.  Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020).  A claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsbury v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsbury, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'"  Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

5

## B.      Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one; the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence.  42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  "[T]he threshold for such evidentiary sufficiency is not high."  Biestek v. Berryhill, 587 U.S. 97, 103 (2019).  Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154.  In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless.  Stout, 454 F.3d at 1055-56.  "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'"  Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020).  The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination."  Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).  Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision.  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  It is

6

not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

### III.

### DISCUSSION AND ANALYSIS

As with the previous appearance in federal court, Plaintiff again argues that the ALJ's opinion is not supported by substantial evidence because the ALJ failed the medical opinion of Dr. Zimmerman. (ECF No. 14, pp. 6-11.) The Commissioner opposes, arguing the ALJ's opinion is supported by substantial evidence. (ECF No. 16.) The Court agrees with the Commissioner.

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original). An ALJ assesses an RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs"). Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20

C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).  Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2).  With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record."  Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is still relevant when assessing the persuasiveness of the source's opinion."  Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3).  Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records."  Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v).  That said, "the ALJ no longer needs to make specific findings regarding these relationship factors."  Id.

The ALJ summarized and analyzed the medical opinion of Lance Zimmerman, Ph.D., as follows:

> The undersigned finds somewhat persuasive the opinion of a treating psychologist, Lance Zimmerman, Ph.D., indicating in May 2020 that the claimant was unable to meet competitive standards with respect to responding appropriately to changes in a routine work setting, dealing with normal work stress, and dealing with the stress of semi-skilled and skilled work, but otherwise had unlimited/very good or limited, but satisfactory ability to perform all other mental work-related activities, and would be absent from work about one day per month (*See ex.* 11F).  This opinion is not fully persuasive because its indications of the claimant's inability to meet competitive standards with respect to responding appropriately to changes in a routine work setting, dealing with normal work stress, and dealing with the stress of semi-skilled and skilled work and her need to be absent from work one day per month are not supported by any explanation other than that she "tends to have high anxiety and panics in uncertain and high stress situations" (*see id.* at 4) and are not consistent with the evidence as a whole documenting typically significantly intact mental status exams and her reports of considerably intact mental and social activities and abilities.  This evidence supports the conclusion that she could have responded appropriately to changes in a routine work setting and dealt with normal work stress in the context of less-mentally demanding work during the period from June 8, 2018

through January 16, 2023.  However, otherwise, the opinion is consistent with the medical evidence during that period documenting the claimant's ongoing complaints of anxiety, but her significant daily activities and abilities and significantly intact mental status exams.

(AR 612-13.)

Thus, the ALJ summarized Dr. Zimmerman's medical opinion, in relevant part, that he opined that Plaintiff was "unable to meet competitive standards" with regard to responding appropriately to changes in a routine work setting, dealing with normal work stress, and dealing with the stress of semi-skilled and skilled work.  The ALJ found these specific opinions, as well as that Plaintiff would need to be absent one day a week from work, not supported beyond Dr. Zimmerman's note that: "She tends to have high anxiety and panics in uncertain and high stress situations."  (Id., citing AR 596.)  After reviewing the medical opinion, the Court finds the ALJ's assessment of supportability to be sufficient.  Again, supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence."  20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1).  Dr. Zimmerman's opinion did not otherwise provide an explanation for his opinions regarding Plaintiff's limitations.

For consistency, the ALJ found that for the same portion of Dr. Zimmerman's opinion, it was not consistent with the evidence as a whole documenting typically significantly intact mental status exams and Plaintiff's reports of considerably intact mental and social activities and abilities. For example, the ALJ observed prior in the opinion that:

in 2020 [Plaintiff] was working toward a master's degree, earning mostly B grades, though she had switched to online classes due to anxiety about leaving her home (See ex. 9F/1, 10F/2; testimony). In 2020 and 2021, when she was no longer taking medications, she reported working on her garden and her master's program, she denied feeling anxious while in her home, and some of her anxiety appeared understandable, resulting from isolation due to the pandemic and her interactions with a violent, threatening neighbor (See ex. 9F/1, 12F/2-6, 13).  In mid-2021 she was attending lectures for school despite her anxiety and trying to find a job she could do from home, she apparently completed jury duty, she planned her grandmother's funeral service, and she was about to begin a marriage and family therapy graduate training program (See id. at 4, 6-9).  In late 2021-early 2022, the claimant performed a job working from home that ended because it was seasonal, not due to her impairments, and she described being up late doing homework due to her "heavy workload" between school and her

9

job and having tiredness due to staying up late that understandably affected her focus (*See* id. at 13-14, 17-18). Further, the claimant was reportedly attempting to obtain protective custody of her niece and nephew (*see id.* at 19), suggesting that she believed she had substantially greater capacity at that time than she alleges having had. Mental status exams during the period from June 8, 2018 through January 16, 2023 demonstrated variable findings of tearfulness, anxiety, fidgeting, or a flat affect (*see* ex. 1F/12, 3F/14, 9F/1, 10F/1-2, 5, 12F/11, 17, 21), but often showed an alert and oriented presentation with no obvious signs of anxiety, appropriate dress and grooming, adequate hygiene, normal mood and affect, cooperative behavior, good eye contact, normal thought content and process, and intact cognitive function, judgment, and insight (*See* ex. 1F/8, 12, 17, 23-24, 2F/54-55, 3F/28, 8F/4, 10F/1, 2, 5).

(AR 611-12.)

Though discussed in another section of the opinion, the ALJ clearly incorporated these findings into the consistency analysis of Dr. Zimmerman.[4] Accordingly, the Court finds the ALJ sufficiently addressed consistency as to Dr. Zimmerman's medical opinion.

Thus, the ALJ did not err in her analysis of Dr. Zimmerman.

While the Court has found that the ALJ's analysis of Dr. Zimmerman's opinion is supported by substantial evidence, the Court nonetheless reaches Plaintiff's argument that "[a]ny conflation of [the supportability and consistency] factors, without separate analyses for each factor, renders the ALJ's analysis insufficient under the regulations." (ECF No. 14, pp. 8-9.) To be sure, Plaintiff has found district court cases where courts found that an ALJ's opinion was to a level of imprecision as to render the opinion to be not supported by substantial evidence. Yet, none of the courts took Plaintiff's hardline position or otherwise attempted to announce a rule. Indeed, the lead, recent Ninth Circuit authority would belie such a position.

In Woods, the Ninth Circuit observed in a footnote that the ALJ had flipped the use of the term consistency with supportability. 32 F.4th at 793 n.4. The Court did not immediately find that

---

[4] The Commissioner's citation to Kaufmann v. Kijakazi, 32 F.4th 843, 851 (9th Cir. 2022) is misplaced. When the Ninth Circuit used the phrase, "[l]ooking to *all* the pages in the ALJ's decision," the Court was discussing what the district court stated it had done when conducting its analysis on a Rule 59(e) motion. Id. (emphasis in original). The Ninth Circuit did not hold that district courts must look to all pages in the ALJ's opinion in Kaufmann. Indeed, the question before the Court in that section was whether a Rule 59(e) motion was proper in the context of a Social Security review in the district court. That said, the Court does not disagree with the principle that a reviewing court should look at the entire opinion of an ALJ in assessing whether it is supported by clear and convincing evidence. However, the Commissioner's cherry-picked language from Kaufmann is simply misleading and ultimately unsupportive of this position.

that the ALJ's analysis was "insufficient"; rather, the Court construed what the ALJ meant in context and gave an admonition: "Although the ALJ's meaning here is clear from context, to avoid confusion in future cases, ALJs should endeavor to use these two terms of art—'consistent' and 'supported'—with precision." Id. Were Plaintiff's suggestion controlling, the Ninth Circuit would have surely addressed it otherwise in Woods. Therefore, this argument is unpersuasive insofar as Plaintiff raise it.

### IV.

### CONCLUSION AND ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED. It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Danielle M. Ayers. The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:    **March 20, 2026**

STANLEY A. BOONE
United States Magistrate Judge